Ruth HENDRICKS, Plaintiff,

v.

DYNEGY POWER MARKETING, INC., et al., Defendants.

Pamela R. Gordon, Plaintiff,

v.

Reliant Energy, Inc., et al., Defendants.

Sweetwater Authority, et al., Plaintiffs,

v.

Dynegy, Inc., et al., Defendants.

Pier 23 Restaurant, et al., Plaintiffs,

v.

PG & E Energy Trading, et al., Defendants.

State of California, Plaintiff,

v.

Dynegy Power Marketing, Inc., et al., Defendants.

No. 00–CV–2524–RHW, 00–CV–2525–RHW, 01–CV–387–RHW, C–01–838–RHW, C–01–178–RHW.

United States District Court, S.D. California.

July 31, 2001.

**ORDER GRANTING PLAINTIFFS'
MOTIONS TO REMAND**

WHALEY, District Judge.

Before the Court are motions to remand brought by Plaintiffs in each of the above-captioned cases: Ct. Rec. ___ in S.D. Cal. No. 00–CV–2524–RHW; Ct. Rec. ___ in S.D. Cal. No. 00–CV–2525–RHW; Ct. Rec. ___ in S.D. Cal. No. 01–CV–387–RHW; Ct. Rec. ___ in N.D. Cal. No. C–01–838–RHW; and Ct. Rec. ___ in N.D. Cal. No. C–01–178–RHW. Oral argument was heard on these motions on June 27, 2001. Attorney appearances are noted in the offi-cial minutes. For the reasons below, the motions are granted and these matters are remanded to the state courts from which they were removed.

## BACKGROUND

Plaintiffs in each case allege that Defendants engaged in anticompetitive conduct while participating in California's energy market, thereby artificially and illegally inflating the wholesale and retail prices of electricity in that state. Plaintiffs originally filed suit in state court, alleging that Defendants' conduct violated California's Cartwright Act and other sections of the California Business and Professions Code prohibiting unfair or unlawful business practices. Various Defendants then removed the actions to federal court in their respective districts, arguing, *inter alia*, that the artful pleading doctrine requires recasting of Plaintiffs' claims in federal terms under the Federal Power Act. The cases were subsequently transferred to this Court by the Judicial Panel on Multi-district Litigation. Plaintiffs now move to remand.

## OVERVIEW

It is clear that Congress intended, in the Federal Power Act, to vest in the federal government a central and controlling role in the regulation of energy production, marketing, and distribution. However, it is equally clear that the jurisdiction of federal courts is limited, and may not be expanded by judicial decree or in the absence of a federal question or issue. On its face, Plaintiffs' complaint alleges only violations of state law. The Court concludes that Congress did not intend for the federal government to entirely occupy the field with the Federal Power Act, thereby completely preempting Plaintiffs' state law claims and converting them into federal questions. Further, although Plaintiffs' claims might conceivably be cast in federal terms, a plaintiff is the master of his or

her own claims; the Court need not recast Plaintiffs' state causes of action into federal causes because Plaintiffs' claims can all be resolved with reference to or resolution of substantial federal questions or issues. Accordingly, the Court concludes that it lacks jurisdiction and remands these matters to the originating state courts.

## ANALYSIS

*A. The limits of federal removal jurisdiction.*

■■■ The Court begins with several propositions regarding removal jurisdiction. Foremost among these is the following:

Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.

*Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (citations omitted). It logically follows that removal jurisdiction is extremely limited. Accordingly, the removal statute, 28 U.S.C. § 1441, is strictly construed against removal, *see Clinton v. Acequia, Inc.,* 94 F.3d 568, 573 (9th Cir.1996), *citing Sullivan v. First Affiliated Sec., Inc.,* 813 F.2d 1368, 1372 (9th Cir.1987), and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992), *citing Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1064 (9th Cir. 1979). Furthermore, "a defendant may remove a case only if the claim could have been brought in federal court." *Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

■ Ordinarily, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). This rule is based upon three key jurisdictional principles: "that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Caterpillar, Inc.,* 482 U.S. at 398–99, 107 S.Ct. 2425. The well-pleaded complaint rule also bars federal courts from asserting jurisdiction based on the existence of a federal defense, even if the defense is anticipated by the complaint, because a defense is not part of a plaintiff's properly-pleaded statement of his or her claim. *See Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

■■■ However, "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd. of California v. Construction Laborers Vacation Trust for S. California,* 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). A federal court may exercise removal jurisdiction under the "artful pleading" doctrine, even if a federal question does not appear on the face of a well-pleaded complaint, in three circumstances. First, a state law claim may be removed "in the rare instances where Congress has chosen to regulate the entire field." *ARCO Envtl. Remediation, L.L.C. v. Department of Health & Envtl. Quality of Montana,* 213 F.3d 1108,

1114 (9th Cir.2000). *See also Metropolitan Life*, 481 U.S. at 63–64, 107 S.Ct. 1542 ("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court. One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.") Second, a state law claim may be recharacterized as federal and, accordingly, removed where the claim is necessarily federal in character. *ARCO Envtl. Remediation*, 213 F.3d at 1114. Third, a state law claim also may be recharacterized as federal and removed where the right to relief depends on the resolution of a substantial, disputed federal question. *Id.* As might be surmised from the narrowness of removal jurisdiction and the longstanding recognition that a plaintiff is the master of his or her complaint,

> [t]he "artful pleading" doctrine is a narrow exception to the straightforward rules of removal jurisdiction, which we will apply only if "the particular conduct complained of [is] governed exclusively by federal law." Further, we will invoke the doctrine "only in exceptional circumstances as it raises difficult issues of state and federal relationships and often yields unsatisfactory results."

*Sullivan*, 813 F.2d at 1372 (citations omitted).

The Court turns to the instant matter with these principles in mind.

**B.   Complete preemption.**

■   When federal law entirely occupies a particular field, that occupation "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Ins. Co.*, 481 U.S. at 65, 107 S.Ct. 1542. Stated differently, removal jurisdiction exists when a plaintiff's state law claims arise out of events or circumstances within a field entirely occupied by federal law. Such preemption is extremely rare; the Supreme Court has recognized complete preemption only with respect to the Labor Management Relations Act, *see Caterpillar, Inc.*, 482 U.S. at 393–94, 107 S.Ct. 2425, and the Employee Retirement Income Security Act of 1974, *see Metropolitan Life*, 481 U.S. at 65–66, 107 S.Ct. 1542. Defendants ask this Court to recognize a third area of complete preemption under the Federal Power Act. The Court declines to do so.

The Ninth Circuit distinguishes between complete preemption, in which federal occupation of the field necessarily converts all state law claims into federal claims, and conflict preemption, in which federal preemption may be a defense to plaintiff's state law claims but may not be an independent basis for federal removal. *See ARCO Envtl. Remediation*, 213 F.3d at 1114. The distinguishing factor between these two preemption doctrines is the existence of federal jurisdiction in the first instance. If Congress preempts state law claims and provides a federal cause of action[1], then original federal jurisdiction may properly be said to exist. However, if Congress preempts state law claims but

---

1.   The old Ninth Circuit rule prior to the Supreme Court's decision in *Caterpillar, Inc.* was that there was no field preemption absent the existence of a federal *remedy. See Sullivan*, 813 F.2d at 1372. The Supreme Court rejected this rule in *Caterpillar, Inc. See* 482 U.S. at 391 n. 4, 107 S.Ct. 2425. The Circuit subsequently distinguished *Caterpillar* by explaining that field preemption still requires the existence of a federal *cause of action*, even if a *remedy* available in state court is not available under federal law. *See Hyles v. Mensing*, 849 F.2d 1213, 1215 (9th Cir.1988)

does not provide a federal cause of action, then Plaintiffs' complaint could not have been brought in federal court and removal jurisdiction will not lie. As the Ninth Circuit explained shortly after the Supreme Court's decision in *Caterpillar, Inc.*:

> Even when federal law preempts state law, a state law claim may not be removed unless federal law also supplants it with a federal claim ... If the plaintiff could not have asserted a federal claim based on the allegations of her state law complaint, she could not have brought the case originally in federal court as required for removal jurisdiction under section 1441. In that case, preemption would be merely asserted as a defense. Thus, to remove a state law claim to federal court under the complete preemption doctrine, federal law must both completely preempt the state law claim and supplant it with a federal claim.

*Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir.1987).

Defendants argue that the Federal Power Act completely preempts Plaintiffs' claims by granting federal courts exclusive jurisdiction over all disputes arising under the Act, *see* 16 U.S.C. § 825p[2]; the Court disagrees. The fact that the Federal Power Act includes an exclusive jurisdiction provision does not mean that the entire field is preempted; instead, the exclusive jurisdiction provision only means that federal preemption is a *defense* to any Federal Power Act claims brought in state court. To conclude otherwise would improperly base federal jurisdiction upon the concept of preemption itself. *See Ultramar America Ltd. v. Dwelle*, 900 F.2d 1412, 1415–16 (9th Cir.1990) ("When the defense of preemption is absolute, any purported state-law claim in actuality arises under whatever federal law preempts the state law. The preemption defense *allows* for recharacterization of the state-law claim into a federal one. It would be inaccurate to say, however, that the concept of preemption itself is the federal claim. One cannot sue in federal court on a mere claim of 'preemption.' ... Recharacterization must occur... The situation is directly analogous to that where federal law preempts state law yet fails to provide its own cause of action. In such a situation, although federal law is a perfectly valid defense to a state claim, that claim cannot be said to actually be a federal claim, for no federal *right of action* exists on point.") (emphasis added). *Ultramar* makes the distinction between complete preemption and conflict preemption clear: removal will not lie when the only basis alleged for removal is preemption itself since "preemption" is not a theory or right upon which a federal cause of action could be brought in the first instance. Instead, removal is only proper where a state cause of action is both *preempted* and *supplanted* with a federal cause of action.[3]

---

("Even if the plaintiff's complaint does not refer to federal law, the case may be removed if federal law preempts completely the state law on which it relies and 'supplants' the state claim with a federal claim. Federal law need not afford the same remedies as state law to support removal."), *citing Caterpillar*, 482 U.S. at 391 n. 4, 107 S.Ct. 2425.

**2.** 16 U.S.C. § 825p grants federal courts exclusive jurisdiction over "all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder."

**3.** Plaintiffs also suggest that the Court should apply the test developed by the Fifth Circuit in *Aaron v. National Union Fire Ins. Co.*, 876 F.2d 1157 (5th Cir.1989) to determine whether a federal statute completely preempts state causes of action. Under that test, there is complete preemption if a defendant demonstrates: (1) the existence of a cause of action within the disputed federal statute; (2) a jurisdictional provision for the cause of action that "closely parallels" the jurisdictional pro-

The Court concludes that the Federal Power Act does not completely preempt Plaintiffs' claims since there is no private right of action under the Federal Power Act to seek a "just and reasonable" rate.[4] *See Montana–Dakota Utils., Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 257, 71 S.Ct. 692, 95 L.Ed. 912 (1951) ("[T]he right to a reasonable rate is the right to the rate which the Commission files or fixes, and that, except for review of the Commission's orders, the courts can assume no right to a different one on the ground that, in its opinion, it is the only or the more reasonable one.") Accordingly, even if the Court were to conclude that Congress intended for the Federal Power Act to preempt state law claims, this preemption is, at most, a defense for Defendants to raise in state court.

A contemporaneous analysis of the legislative history of the Federal Power Act supports the Court's conclusion that the Act does not preempt the field. In *First Iowa Hydro–Elec. Co-op. v. Federal Power Comm'n*, 151 F.2d 20 (D.C.Cir.1945), *rev'd on other grounds*, 328 U.S. 152, 66 S.Ct.

906, 90 L.Ed. 1143 (1946), the D.C. Circuit concluded, after analyzing the legislative history of the Federal Power Act, that Congress did not intend to occupy the field in enacting the Act:

> The fact that particular phases of an interstate activity have long been regulated by states, has been recognized as a strong reason why, in the continued absence of conflicting Congressional action, the state regulatory laws should be declared valid. The same reasoning should apply where Congress, having newly decided to enter a particular field of interstate commerce, leaves untouched regulatory state laws concerning part of the area. Where the Federal law authorizes state action, such action is permissible even as to matters which could otherwise be regulated only by uniform national enactments. In enacting the Federal Power Act, it was not the intention of Congress that the Federal government should occupy the field completely, or that the states should be excluded. On the contrary, the Act contemplates a dual system of control and

visions of the LMRA and ERISA; and (3) evidence of the kind of congressional intent found to exist in ERISA. *Aaron*, 876 F.2d at 1164–65. The first element is satisfied since the Federal Power Act does not provide a private right of action. *See Montana–Dakota*, 341 U.S. at 251, 71 S.Ct. 692. The Ninth Circuit included similar language in a recent removal case. *See Blab T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc.*, 182 F.3d 851, 856 (11th Cir.1999) ("These cases reveal that, although the Supreme Court recognizes the existence of the complete preemption doctrine, the Court does so hesitatingly and displays no enthusiasm to extend the doctrine into areas of law beyond the LMRA and ERISA. A narrow reading of Metropolitan Life suggests that complete preemption occurs only when a federal cause of action features jurisdictional language that closely parallels that of section 301 of the LMRA as well as an express statement within the legislative history that Congress intends for all related claims to arise under federal law in

the same manner as section 301. Courts, however, have not uniformly interpreted Metropolitan Life in this fashion and have struggled to define the exact contours of the complete preemption doctrine.") The Court need not determine whether the Fifth Circuit test would also govern in the Ninth Circuit since the Court concludes that complete preemption is made impossible by the absence of a federal cause of action supplanting Plaintiffs' state claims.

4. Defendants argue that Plaintiffs' actions actually are challenges to the rates charged as not "just and reasonable" under 16 U.S.C. § 824d. The propriety of this characterization is discussed more fully below. Assuming for purposes of the instant argument that Defendants are correct, however, the Court concludes that there is no complete preemption since the Federal Power Act does not provide Plaintiffs with a private cause of action to make this challenge.

the exercise of appropriate powers by the State, as well as by the Federal government. This is the plain purpose of Section 9(b). It is revealed, also, by other sections of the Act.

*Id.* at 23–24 (footnotes omitted).[5] This interpretation is further consistent with the extremely narrow sweep of the complete preemption doctrine.

## C. Necessarily federal in character, resolution of substantial federal question.

■ In the absence of complete preemption, a state claim is properly recharacterized as a federal claim under the artful pleading doctrine only when it raises claims that are necessarily federal in character, or where the right to relief depends on the resolution of a substantial, disputed federal question. *See ARCO Envtl. Remediation,* 213 F.3d at 1114. The contours of these two exceptions are somewhat ill-defined in case law, and seem to blend together in the context of this case. Under Ninth Circuit law, a claim is "necessarily federal" when it falls within the express terms of a statute granting federal courts exclusive jurisdiction over the subject matter of the claim. For example, in *Brennan v. Southwest Airlines Co.,* 134 F.3d 1405, 1409–10 (9th Cir.1998), the Ninth Circuit held that a claim seeking a refund of amounts collected by airlines as an allegedly improper travel tax was nec-essarily federal because it sought the refund of a "tax or sum" as defined in a federal statute granting exclusive jurisdiction to federal courts over suits seeking refund of a tax or sum. Similarly, in *ARCO Envtl. Remediation,* 213 F.3d at 1115, the Circuit held that claims seeking release of information about a CERCLA cleanup were not necessarily federal under CERCLA because they did not constitute a "challenge to a CERCLA cleanup" as that term was used in CERCLA's exclusive jurisdiction provision.

Similarly, a claim raises a substantial question of federal law when its resolution requires reference to or interpretation of federal law. For example, in *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) the Supreme Court held that management plaintiffs' claim for wrongful discharge from a unionized workplace did not raise a substantial question of federal law, despite the fact that the workers were covered by a collective-bargaining agreement governed by the Labor Management Relations Act, since resolution of the plaintiffs' claims did not require interpretation of the collective bargaining agreement, did not rely upon rights created by the collective bargaining agreement, and did not address the relationship between the individual plaintiffs' contracts and the collective bargaining

---

5. The Court also notes that in *Engle v. West Penn Power Co.,* 366 Pa.Super. 104, 530 A.2d 913 (1987), a Pennsylvania Superior Court held that the Federal Power Act did not completely preempt plaintiffs' common law tort claims against an electric utility for damage cause by an accidental water release from the utility's dam. In reaching this decision, the *Engle* court relied on the Supreme Court's decision in *Pan American Petroleum Corp. v. Superior Court,* 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961), in which the Supreme Court held that the federal Natural Gas Act did not completely preempt state contract claims. The court in *Engle* noted that the legislative history of the Natural Gas Act indi-cated that it was patterned after the Federal Power Act. *Id.,* 530 A.2d at 917. Noting the congruity between the jurisdictional provisions of the two Acts, and noting that the Supreme Court in *Pan American* held that the Natural Gas Act did not completely preempt, the *Engle* court concluded that "because it is well-established that the Natural Gas Act does not create a cause of action that completely preempts state contract actions, we see no reason either in law or logic advising against the use of case law interpreting the same to give us insight into the breadth Congress intended to imbue in the 'exclusivity' clause of § 825 of the Federal Power Act." *Id.* at 918.

agreement. *Id.* at 395, 107 S.Ct. 2425. Importantly, the Court concluded that the complaint should not be recharacterized in federal terms merely because it could; instead, recharacterization was improper so long as a state theory could be pled. *Id.* at 396–97, 107 S.Ct. 2425. The Ninth Circuit has reached the same conclusion. In *Duncan v. Stuetzle,* 76 F.3d 1480 (9th Cir. 1996), the Ninth Circuit held that to show that the plaintiff's claims required resolution of a substantial federal question, the defendant "must show that resolution of a federal trademark law question is essential to *each* of the alternative theories in support of *any one* of the three causes of action in the complaint. Stated another way, if a single state-law based theory of relief can be offered for each of the three causes of action in the complaint, then the exercise of removal jurisdiction was improper." *Id.* at 1485 (emphasis in original). The Circuit then analyzed each of the plaintiff's claims and concluded that removal was improper after determining that there was a state law theory of recovery for each claim. *Id.* at 1490–91. Similarly, in *Sparta Surgical Corp. v. National Ass'n of Sec. Dealers, Inc.,* 159 F.3d 1209 (9th Cir.1998), the Circuit concluded that a plaintiff's allegations that NASDAQ improperly de-listed and suspended trading in its stocks required resolution of substantial federal questions because the validity of the NASDAQ's actions depended upon whether the actions violated federal securities rules. As the Circuit noted, "[i]f NASD's actions conformed to the rules, there can be no viable cause of action; if its actions violated the rules, any claim falls under the imperative of 15 U.S.C. § 78aa which grants the federal courts

'exclusive jurisdiction.'" *Id.* at 1212. Accordingly, the validity of the plaintiff's claims could only be determined by reference to federal law. *Id. See also Rains v. Criterion Sys., Inc.,* 80 F.3d 339, 344 (9th Cir.1996) ("An artfully pleaded state law claim may be recharacterized as a federal claim by the court to which it is removed. Rains did not, however, bring a complaint that was artfully pleaded to avoid federal jurisdiction. Rather, he brought a state law claim and cited a federal statute as an alternate basis for establishing one element of his claim. The claim was authorized by state law and no essential federal law was omitted. The artful pleading doctrine does not permit defendants to achieve what they are trying to accomplish here: to rewrite a plaintiff's properly pleaded claim in order to remove it to federal court.") Accordingly, Plaintiffs' claims in this case only raise a substantial question of federal law if their validity turns on the interpretation or application of federal law.

The two doctrines meld in this case since the essential question under either framework is whether Plaintiffs' claims are only properly characterized as actions challenging rates as not "just and reasonable" within the meaning of 16 U.S.C. § 824d.[6] This inquiry can be better phrased in terms of the traditional "essential element" test outlined by the Supreme Court in *Gully v. First Nat'l Bank in Meridian,* 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936): "To bring a case within the [federal-question removal] statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the

---

**6.** If Plaintiffs are challenging the rates as not "just and reasonable" under 16 U.S.C. § 824d, then they are raising a substantial federal question that can only be resolved by looking to the Federal Power Act. Such a challenge would also bring Plaintiffs within

the Federal Power Act's exclusive jurisdiction provision since the challenge would be an action to enforce a "liability or duty created by" the Federal Power Act. *See* 16 U.S.C. § 825d.

plaintiff's cause of action." *See also Ultramar America Ltd. v. Dwelle*, 900 F.2d 1412, 1414 (9th Cir.1990) ("Claims brought under state law may 'arise under' federal law if vindication of the state right necessarily turns upon construction of a substantial question of federal law, i.e., if federal law is a necessary element of one of the well-pleaded claims.") Accordingly, Plaintiffs' claims may only be recharacterized as federal, under the artful pleading doctrine, if proof that rates charged were not "just and reasonable" under 16 U.S.C. § 824d is an essential element of a Cartwright Act or Cal. Bus. & Prof.Code § 17200 action.

The Court concludes that Plaintiffs can establish a violation of the Cartwright Act without reference to the "just and reasonable" standard of the Federal Power Act. To prevail on a cause of action under the Cartwright Act for a combination in restraint of trade, a plaintiff is required to establish "[t]he formation and operation of the conspiracy; the illegal acts done pursuant thereto; a purpose to restrain trade; and the damage caused by such acts." *G.H.I.I. v. MTS Inc.*, 147 Cal.App.3d 256, 265, 195 Cal.Rptr. 211 (1983). The parties do not cite, and the Court's own research has not uncovered, any cases holding that liability under the Cartwright Act is determined by reference to the Federal Power Act. The only somewhat relevant reference to federal law that the Court can find is the statement in California law that the Cartwright Act is patterned after the Sherman Act, and that California courts should, accordingly, look to federal cases

interpreting the Sherman Act in Cartwright Act cases. *See Marin County Bd. of Realtors, Inc. v. Palsson*, 16 Cal.3d 920, 925, 130 Cal.Rptr. 1, 549 P.2d 833 (1976). Far from making the Federal Power Act relevant, this reference distinguishes Cartwright Act liability from liability under the Federal Power Act when viewed in light of *Otter Tail Power Co. v. United States*, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973). In *Otter Tail*, the Supreme Court held that the Federal Power Act did not foreclose federal antitrust liability under the Sherman Act. *Id.* at 373–75, 93 S.Ct. 1022. Presumably, the Sherman Act would not continue to be viable or necessary if the Federal Power Act used the same standards in regulating the power industry. Accordingly, the Court concludes that Plaintiffs could state a claim under California's Cartwright Act without alleging or establishing that the electric rates charged were not "just and reasonable." Stated in terms of the *Gully* rule, whether the rates actually charged were "just and reasonable" is not an essential element of Plaintiffs' California antitrust claim. The fact that Plaintiffs *might* attempt to establish liability by challenging the rates as not "just and reasonable" within § 824d is irrelevant since such proof is not the only way in which Plaintiffs can prevail. *See Duncan, supra; Sparta, supra.*[7]

Similarly, the determination of what constitutes a "just and reasonable rate" under 16 U.S.C. § 824d does not necessarily resolve the issue of whether anticompet-

---

**7.** The fact that some Plaintiffs might have used the phrase "just and reasonable" or "unjust and unreasonable" in their complaint does not change the Court's analysis because there is no indication that Plaintiffs intended to use these claims as they are used in 16 U.S.C. § 824d to plead a federal claim (and thereby invoke federal jurisdiction) on the face of their complaints. "[T]he mere refer-

ence of a federal statute in a pleading will not convert a state law claim into a federal cause of action if the federal statute is not a necessary element of the state law claim and no preemption exists." *Easton v. Crossland Mortg. Corp.*, 114 F.3d 979, 982 (9th Cir. 1997), *citing Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 345–47 (9th Cir.1996).

itive conduct occurred. "In determining a just and reasonable rate, the Commission must consider several factors, including operating expenses, depreciation expenses, taxes, and a reasonable return to the utility's investors." *Public Serv. Co. of New Mexico v. Federal Energy Regulatory Comm'n*, 832 F.2d 1201, 1205–06 (10th Cir. 1987). Furthermore, much of the focus in the "just and reasonable rate" interpretation is on the utility's financial health, and not on the market. *See Anaheim, Riverside, Banning, Colton and Azusa, Cal. v. Federal Energy Regulatory Comm'n*, 669 F.2d 799, 803 (D.C.Cir.1981) (" 'Just and reasonable' rates required by this subchapter should enable a utility company to operate successfully, to maintain its financial integrity, to attract capital, and to compensate its investors for risks assumed; investors should receive returns commensurate with those earned on comparable risk stock.") The Federal Energy Regulatory Commission is obligated to consider "in appropriate circumstances, the anticompetitive effects of regulated aspects of interstate utility operations" in setting a "just and reasonable rate." *Gulf States Utilities Co. v. FPC*, 411 U.S. 747, 758–59, 93 S.Ct. 1870, 36 L.Ed.2d 635 (1973). However, there are no clearly-defined standards for a "just and reasonable" rate under § 824d, implying that a certain amount of anticompetitive activity may be tolerable under the Federal Power Act (even if that anticompetitive activity is greater than would otherwise be tolerated under the Cartwright Act) so long as other factors particular to a specific utility outweigh the anticompetitive effects of the rate. *See Public Serv. Co. of New Mexico v. Federal Energy Regulatory Comm'n*, 832 F.2d 1201, 1205–06 (10th Cir.1987)

("Under the statutory standard of 'just and reasonable' it is the result reached not the method employed which is controlling. It is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry under the Act is at an end. The fact that the method employed to reach that result may contain infirmities is not then important.") The lack of clear criteria for determining "just and reasonable" rates and the potential acceptance by the Federal Power Act and Federal Energy Regulatory Commission of a certain amount of anticompetitive activity is inconsistent with California's Cartwright Act, whose main focus is on curbing anticompetitive activity in the market.

■ It logically follows that Plaintiffs' Cal. Bus. & Prof.Code § 17200 claims may also not be recharacterized as federal under the artful pleading doctrine because they flow from Defendants' alleged anticompetitive acts in violation of the Cartwright Act, and not from a violation of the Federal Power Act.[8] Furthermore, the California Supreme Court has recognized that § 17200 provides a cause of action for unfair business practices even in the absence of the breach of any other law. *See Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 973 P.2d 527, 83 Cal.Rptr.2d 548 (1999) ("By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable. However, the law does more than just borrow. The statutory language referring to 'any unlawful, unfair or fraudulent'

---

**8.** Section 17200 provides:

As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading

advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

practice makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law. 'Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. In other words, a practice is prohibited as unfair or deceptive even if not unlawful and vice versa.' "), *quoting Podolsky v. First Healthcare Corp.*, 50 Cal.App.4th 632, 647, 58 Cal. Rptr.2d 89 (1996) (citations omitted). As a result, Plaintiffs can state a violation under § 17200 in two ways, independent of the Federal Power Act: either by alleging a violation of the Cartwright Act as the predicate offense, or by alleging that the anti-competitive activity was unfair or deceptive even if not unlawful. Accordingly, *Duncan* makes the artful pleading doctrine inapplicable.

*D. Filed rate doctrine.*

■ The filed rate doctrine does not change the Court's decision. Under that doctrine, a plaintiff may not recover damages on a theory that anticompetitive activity artificially inflated the rates charged for a good or commodity when the rates charged were submitted to and approved by the appropriate federal agency. *See County of Stanislaus v. Pacific Gas & Elec. Co.*, 114 F.3d 858, 863 (9th Cir.1997); *Keogh v. Chicago & N.W. Ry.*, 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922). The fact that the filed rate defense may be central to this action or an absolute defense is of no moment to the removal and remand inquiry since "[e]ven if the case turns entirely on the validity of a federal defense, federal courts may not assert jurisdiction unless a federal right or immunity is 'an element, and an essential one, of the plaintiff's cause of action.' " *Patrickson v. Dole Food Co.*, 251 F.3d 795, 799 (9th Cir.2001), *quoting Franchise Tax Bd. v. Construction Laborers Vacation Trust*,

463 U.S. 1, 11, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), *quoting Gully*, 299 U.S. at 112, 57 S.Ct. 96. *See also Caterpillar, Inc.*, 482 U.S. at 399, 107 S.Ct. 2425 ("But a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.") Whether the doctrine applies in California's "deregulated" electricity market may well be a core issue in this matter; however, California state courts are equally capable of settling that dispute.

**CONCLUSION**

As stated at the outset, this case arises at the intersection of two important principles. First, federal courts are courts of limited jurisdiction. Second, the federal government has a strong interest in all facets of energy production, marketing, and distribution. Defendants ask the Court to make the second principle paramount. As sensible as such an approach might be in light of the clearly expressed federal interest in energy regulation, the Court is constitutionally compelled to make the first principle primary and recognize the limits of its jurisdiction. Accordingly, the Court concludes that removal was improper and orders that these actions be remanded to their respective state courts of origin.

**IT IS HEREBY ORDERED:**

1. Plaintiffs' motion to remand S.D. Cal. No. 00–CV–2524–RHW (**Ct.Rec.___**) is **GRANTED.** This matter is **REMANDED** to the court of the State of California from which it was removed.

2. Plaintiffs' motion to remand S.D. Cal. No. 00–CV–2525–RHW (**Ct.Rec.___**) is **GRANTED.** This matter is **REMANDED** to the court of the State of California from which it was removed.

3. Plaintiffs' motion to remand S.D. Cal. No. 01–CV–387–RHW (**Ct.Rec.___**) is **GRANTED.** This matter is **REMANDED** to the court of the State of California from which it was removed.

4. Plaintiffs' motion to remand N.D. Cal. No. C–01–838–RHW (**Ct.Rec.___**) is **GRANTED.** This matter is **REMANDED** to the court of the State of California from which it was removed.

5. Plaintiffs' motion to remand N.D. Cal. No. C–01–178–RHW (**Ct.Rec.___**) is **GRANTED.** This matter is **REMANDED** to the court of the State of California from which it was removed.

6. All pending motions in each of these matters are **denied as moot.**

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order, to provide copies to counsel and to the Clerk of the Judicial Panel on Multidistrict Litigation, and to close the files.