**T & E PASTORINO NURSERY, et al., Plaintiffs,**

**v.**

**DUKE ENERGY TRADING AND MARKETING, L.L.C., et al., Defendants.**

**And Other Consolidated Cases**

Nos. CV–02–2059–RHW, CCV–02–2176–RHW, CV–02–2178–RHW, CV–02–2180–RHW, CV–02–2181–RHW, CV–02–2182–RHW.

United States District Court, S.D. California.

May 19, 2003.

1242

William Henry Parish, Parish and Small, Stockton, CA, for Plaintiffs.

Thomas J. McCormack, Chadbourne and Parke, New York City, John M. Grenfell, Pillsbury Winthrop, San Francisco, CA, Mark D. Flanagan, Wilson Sonsini Goodrich and Rosati, Palo Alto, CA, Bruno William Katz, Shea McNitt and Carter, San Diego, CA, Joel B. Kleinman, James van R. Springer, Lisa M. R. Miller, Peter J. Kadzik, Dickstein Shapiro and Morin, Washington, DC, Bryan A. Merryman, Law Offices of Bryan A. Merryman, Los

Angeles, CA, Thomas S. Hixson, Bingham McCutchen, San Francisco, CA, J. Gregory Copeland, Rufus Oliver, III, Baker Botts, Houston, TX, Mark Robeck, Baker Botts, Austin, TX, for Defendants.

## ORDER DENYING MOTION TO REMAND

WHALEY, District Judge.

Before the Court are Plaintiffs' Motions to Remand.[1] A hearing was held on March 26, 2003, in San Diego California, to hear oral argument on the motions.

### BACKGROUND

The Court is intimately familiar with the procedural and factual background of these cases, as they stem from the same circumstances concerning the California energy crisis that the Court addressed in the *Hendricks v. Dynegy Power Marketing*, 160 F.Supp.2d 1155 (S.D.Cal.2001), group of cases.[2]

Plaintiffs' complaints allege unfair business practices by the Defendants in California's wholesale energy market, in violation of California Business and Professions Code § 17200, *et seq.*[3] While the allegations contained in Plaintiffs' complaints are similar to those the Court has addressed in prior cases, the parties focus on an allegation contained in the complaints that is allegedly unique to the cases at bar. In the complaints, Plaintiffs state:

Defendants began to exercise market power in other ways as well. For example, suppliers submitted bids not only for electricity to be delivered, but also for generating capacity to be held in reserve in case it is needed in response to unexpected events like plant outages. This is known as the "Ancillary Services" market. According to lawsuits filed in March, 2002 by the California Attorney General, beginning in about June 1998, defendant Dynegy and others began to violate their ancillary services agreements by collecting payments for holding capacity in reserve, and also using that capacity to produce and sell electricity into the California market without a dispatch order from the ISO. Thus, these producers were in effect charging California twice for the same electricity. According to the allegations made by the Attorney General, the costs associated with the Ancillary Services commitments that the defendants did not fulfill, the costs for very expensive electricity that had to be purchased on an emergency basis to replace the energy that defendants were unable to provide when called upon pursuant to their contracts, and the costs of penalties incurred by the ISO for violation of reliability standards set by the Western Systems Coordinating Council, were passed on to California's utilities, and ultimately to California consumers.

Pastorino Complaint, ¶ 56; El Super Burrito Complaint, ¶ 57; RDJ Farms Complaint, ¶ 48; Century Theatres Complaint, ¶ 55.[4]

---

1. The Court will address Plaintiffs' motion to remand in *Millar v. Allegheny Energy*, CV–02–2179–RHW, in a separate order, as the allegations contained in the complaint in that case differ significantly from those raised here.

2. A discussion about the nature and operation of California's deregulated energy market, which forms the backdrop of Plaintiffs' allegations in this case, was included in the Court's recent decision in *In re California Wholesale Elec. Antitrust Litig.;* 244 F.Supp.2d 1072 (S.D.Cal.2003).

3. RDJ Farms, Case No. 02–CV–2059 (RHW), includes a claim under California's Cartwright Act as well.

4. The Leo's Day and Night Pharmacy, Bronco Don Holdings, El Super Burrito, and J & M Karsant Family complaints, ¶ 46, allege:

 According to a lawsuit filed by the California Attorney General, defendant Dynegy and others violated their contracts with the ISO to provide electricity on an "as needed" basis. These breaches began in or

A little background as to the operation of the ISO markets is helpful to better understand the grounds for the allegation. Under California's restructured energy scheme, the Independent System Operator (ISO) operates the electricity grid and, to that end, runs the spot market for electricity. During the time period in question, if consumer demand was not met by scheduled supplies into the California Power Exchange or other sources, the ISO was required to procure additional electricity to serve consumers' requirements and maintain the stability of the grid. To facilitate this, the ISO purchases reserve capacity from wholesalers. This reserve capacity is left idle (or "reserved") until the ISO requires additional generation of power. If the ISO requires the additional power, it issues an order to the wholesaler to generate such power out of the reserve capacity; if not, the reserved capacity is left ungenerated. *See People of the State of California v. Mirant Corp.*, 2002 WL 1897669, *1 (N.D.Cal.2002). The ancillary services contracts related to the purchases of the reserved capacity, and the ISO tariff governed the duties of the parties under the contracts. Thus, Plaintiffs allege, in part, that it was this "reserve capacity" system that Defendants were unfairly manipulating.

Defendants claim that the inclusion of the allegation outlined above in the complaints sets these cases apart from the factual circumstances the Court considered in *Hendricks*, and provides the Court federal question jurisdiction. In addition, Defendants maintain that because the complaints only contain a single cause of action for violations of Section 17200, but cite no specific state law as a predicate for the claim, the Court necessarily must resort to federal law to determine if the challenged conduct is "unlawful, unfair, or deceptive" under the state statute. In this regard, as well, Defendants assert that federal question jurisdiction exists.

### DISCUSSION

### A. Federal Question Jurisdiction

 An action must be remanded to state court because the federal court lacks subject matter jurisdiction or because of a defect in the removal procedure. 28 U.S.C. § 1447(c). If a district court lacks subject matter jurisdiction over a removed action, it has the duty to remand it, for "removal is permissible only where original jurisdiction exists at the time of removal or at the time of the entry of final judgment." *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998).

 Removal to federal court is governed by 28 U.S.C. § 1441. The removal statute on which Defendants rely, 28 U.S.C. § 1441(b), states in relevant part that

[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

As a general matter, the jurisdiction of federal courts is limited, and may not be expanded by judicial decree or in the absence of a federal question or issue. As such, removal jurisdiction is extremely limited, and the removal statute, 28 U.S.C.

about June 1998. As discussed above, the contracts required that the third party electricity generator set aside the capacity to generate electricity that might be needed and that it not use that capacity for electricity being sold to the PX. However, defendant Dynegy and others used that capacity to produce electricity that was sold to the PX even though they collected payments for reserving that capacity.

§ 1441, is strictly construed against removal. *See Clinton v. Acequia, Inc.,* 94 F.3d 568, 573 (9th Cir.1996), *citing Sullivan v. First Affiliated Sec., Inc.,* 813 F.2d 1368, 1372 (9th Cir.1987). Suits filed in state court may be removed to federal court only if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). Thus, in order for the removal statute to be applicable, and for this Court to be able to exercise jurisdiction, Defendants must show that Plaintiffs' complaint alleged at least one claim "arising under" the Federal Power Act. *Cf. Duncan v. Stuetzle,* 76 F.3d 1480, 1485 (9th Cir.1996).

■ As the Ninth Circuit has noted, most of the seminal cases that have addressed the issue of whether a claim is one "arising under" federal law have done so while interpreting 28 U.S.C. § 1331, the general federal question statute ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). *Id.* (internal citations omitted). Those cases have held that "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). This rule is based upon three key jurisdictional principles: "that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Id.* at 398–99, 107 S.Ct. 2425. That being said, "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd. of California v. Construction Laborers Va-cation Trust for S. California,* 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

■ The principles encompassed in § 1441 and § 1331 are, thus, readily distilled into a single two pronged test. Under that test, federal jurisdiction extends only over those cases in which a well-pleaded complaint establishes either (1) that federal law creates the cause of action, thereby conferring original jurisdiction to the court as described under § 1441, or (2) that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law, thereby conferring jurisdiction to the court under § 1331. *See Christianson v. Colt Indus.,* 486 U.S. 800, 808, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (citing *Franchise Tax Board of California,* 463 U.S. at 27–28); *see also Duncan,* 76 F.3d at 1486.

1. **Federal Jurisdiction Under Prong One of the Well–Pleaded Complaint Rule and Allegations of Misconduct in the Ancillary Services Markets**

Defendants argue that the Court must exercise jurisdiction because Plaintiffs allege violations of the ISO Tariff. In essence, Defendants contend that federal law creates the cause of action contained in Plaintiff's well-pleaded complaint, thereby satisfying the first prong of the test articulated above. Defendants maintain that the Ninth Circuit's decision in *Sparta Surgical Corp. v. National Ass'n of Sec. Dealers, Inc.,* 159 F.3d 1209 (9th Cir.1998), and Judge Walker's decision in *People v. Mirant,* 2002 WL 1897669 (N.D.Cal.2002), directly support their position that federal jurisdiction exists on these grounds.

In *Sparta Surgical,* the plaintiff filed suit in state court alleging a variety of state common-law claims. The factual basis for plaintiff's claim centered on its allegations that NASDAQ violated its own

rules and improperly de-listed and suspended trading in plaintiff's stocks. 159 F.3d. at 1210. The Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.,* however, vested jurisdiction in the federal courts for any violation of exchange rules (the Act expressly states: "[t]he district courts of the United States … shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder."). NASDAQ's own rules governing its decisions to de-list were issued pursuant to the Exchange Act's directive that organizations such as NASDAQ adopt rules in conformance with the Exchange Act. 159 F.3d at 1212. The defendant removed the case to *federal district court, claiming federal jurisdiction existed.*

The Ninth Circuit held that because plaintiff's request for relief under state law claims was *"partially* predicated on a subject matter committed exclusively to federal jurisdiction," only a federal court could adjudicate the claims, and removal was proper. *Id.* at 1213 (emphasis added). In particular, the court stated: "[i]f [NASDAQ's] actions conformed to the rules, there can be no viable cause of action; if its actions violated the rules, any claim falls under the imperative of [the Exchange Act] which grants the federal courts 'exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder …'" *Id.* at 1212 (emphasis added). Thus, federal jurisdiction existed because plaintiffs essentially pleaded a federal cause of action. *Id.*

In *People v. Mirant,* the court addressed allegations identical to those brought by Plaintiffs here-the case dealt with the lawsuit brought by the California Attorney General ("AG") that is directly referenced in the allegation listed above and contained in Plaintiffs' complaints. Specifically, in *Mirant,* the AG asserted a cause of action under § 17200 of the California unfair business practices law, alleg-

ing that defendants engaged in various unfair business practices with respect to the ancillary services they contracted to provide the ISO. *See* 2002 WL 1897669 at *2. The AG alleged that defendants resold the energy that they had contracted to keep in reserve. *Id.* The court found that federal jurisdiction existed over the state law claim, stating:

> [H]ere the AG asserts liability based on defendants' violation of the ISO tariff. Because it is adopted by FERC as a federal regulation, the ISO tariff is more than a contract between private parties; it is federal law. As the AG's claims are based on violation of the ISO tariff, they are based on violation of federal law.

*Id.* at *6. Thus, in the context of allegations identical to those included in Plaintiffs' complaint here, Judge Walker found that federal law created the cause of action alleged by the AG and, thus, the court had subject matter jurisdiction.

 Here, the Federal Power Act's ("FPA") jurisdictional provision provides federal courts "exclusive jurisdiction of violations of [the FPA] or the rules, *regulations,* and orders thereunder." 16 U.S.C. § 825p (emphasis added). A tariff filed with a federal agency is the equivalent of a federal regulation. *See Cahnmann v. Sprint Corp.,* 133 F.3d 484, 488 (7th Cir. 1998) (citing *Lowden v. Simonds–Shields–Lonsdale Grain Co.,* 306 U.S. 516, 520, 59 S.Ct. 612, 83 L.Ed. 953 (1939)). Thus, the term "regulation" as provided in Section 825p of the FPA necessarily includes FERC-approved tariffs filed by public utilities such as the ISO tariff. As a result, federal courts have exclusive jurisdiction over any claims involving violations of the ISO tariffs. Duties arising under the ancillary services contracts are governed by the FERC-approved ISO tariff.

 Here, although Plaintiffs' theories are posited on state law claims-*i.e.,*

violation of California Business and Professions Code § 17200–they are founded to some degree on the Defendants' conduct in the ancillary services market that is governed by ISO tariff, the propriety of which must be exclusively determined by federal law. Because the parties' contractual duties arise under the terms of the ISO tariff, any claim stemming from Defendants' breach of their obligations under the ancillary services contracts is necessarily based on an assumed violation of the tariff itself. In this regard, if Defendants' actions violated their obligations under the ancillary services contracts, any claim falls under the imperative of 16 U.S.C. § 825p, which grants the federal courts "exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder . . . ." In this manner, Plaintiffs' cause of action is plainly premised, in part, on federal law. Hence, even though Plaintiffs' claims are "carefully articulated in terms of state law," this Court has subject matter jurisdiction.[5] *See Sparta Surgical,* 159 F.3d at 1212. When a plaintiff chooses to plead what "must be regarded as a federal claim," then "removal is at the defendant's option." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 399, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

### 2. Federal Question Jurisdiction Under Prong Two of the Well–Pleaded Complaint Rule: Preemption, Necessarily Federal in Character and Existence of a Substantial Question of Federal Law

 The Defendants also maintain that removal is proper in these cases be-cause Plaintiffs' claims are completely preempted, are "necessarily federal in character," and hinge on "substantial federal questions." As noted, in general, district courts have federal-question jurisdiction only if a federal question appears on the face of a plaintiff's complaint. *Louisville & Nashville R. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908). However, the artful pleading doctrine creates an exception to this general rule. Artful pleading exists where a plaintiff articulates an inherently federal claim in state-law terms. *Brennan v. Southwest Airlines, Co.,* 134 F.3d 1405, 1409 (9th Cir.1998). A federal court may exercise removal jurisdiction under the "artful pleading" doctrine, even if a federal question does not appear on the face of a well-pleaded complaint, in three circumstances: (1) where federal law completely preempts state law; (2) where the claim is necessarily federal in character; or (3) where the right to relief depends on the resolution of a substantial, disputed federal question. *ARCO Envt'l Remediation, LLC v. Department of Health & Envt'l Quality,* 213 F.3d 1108, 1114 (9th Cir.2000). Defendants assert that all three of these exceptions apply here.

### a. Complete Preemption

 Defendants maintain that Plaintiffs' state law claim is completely preempted by the Federal Power Act and, thus, removal jurisdiction is appropriate on this basis. Of course, this Court already addressed this precise issue in *Hendricks* and held the exact opposite. In *Hen-*

---

**5.** In this context, it is important to differentiate between federal question jurisdiction under Section 1331 and original federal jurisdiction. Jurisdiction lies here not under 28 U.S.C. § 1331, but under 16 U.S.C. § 825p, which vests exclusive jurisdiction in the federal courts over claims concerning duties created by the ISO tariff. As such, the rule that state law claims cannot be alchemized into federal causes of action by incidental reference has no application when relief is partially predicated on a subject matter committed exclusively to federal jurisdiction. *See Sparta Surgical,* 159 F.3d at 1212–13 (citing *Hawkins v. National Ass'n of Sec. Dealers, Inc.,* 149 F.3d 330, 332 (5th Cir.1998)).

*dricks*, this Court held that the FPA does not preempt the entire field but, rather, that federal preemption is merely a defense to any FPA claims brought in state court. 160 F.Supp.2d at 1159.

Defendants claim, however, that the Ninth Circuit's recent decision in *Botsford v. Blue Cross & Blue Shield of Montana, Inc.*, 314 F.3d 390 (9th Cir.2002) overrules *Hendricks's* holding that a private right of action is essential to the complete preemption doctrine. *Botsford*, however, is not controlling.

In *Botsford*, the plaintiff brought suit to recover medical expenses for which he was not reimbursed under his federal health insurance plan. Plaintiff asserted a state statutory claim under the Montana Unfair Trade Practices Act. *Id.* at 392. Defendant moved to dismiss the case on the ground that it was preempted by the Federal Employees Health Benefits Act ("FEHBA"). The Ninth Circuit held that the district court had jurisdiction over plaintiff's claim and that it should be dismissed because FEHBA preempted Plaintiff's claim under the state statute. *Id.* at 399. The Ninth Circuit reasoned in *Botsford* that under conflict preemption, where a state law conflicts with a federal law that grants exclusive jurisdiction to the federal judiciary *and* the federal law provides remedies that displace state law remedies, removal is appropriate.

Thus, Defendants rely on *Botsford* for the proposition that the FPA completely preempts Plaintiffs' state law claim because Plaintiffs' state law claim conflicts with the FPA, and the FPA provides a remedy that supplants state law claims. Here, however, Plaintiffs' complaints do not present a conflict between the state statutory claim under which they are suing, and the FPA. Plaintiffs need not show a violation of the FPA to prove that Defendants violated the California Business and Professions Code, Section 17200. More-

over, the FPA does not grant Plaintiffs a private right of action to seek a remedy against Defendants for their improper use of market power to manipulate the California electricity market. Thus, complete preemption does not exist in this case, thereby destroying removal jurisdiction.

### b. Claim is necessarily federal in character

 Here, it does not appear that the Plaintiffs' claim is "necessarily federal in character." A claim is "necessarily federal" when it falls within the express terms of a statute granting federal courts exclusive jurisdiction over the subject matter of the claim. *See Brennan*, 134 F.3d at 1409; *ARCO*, 213 F.3d at 1114–15. However, the Ninth Circuit has made clear that a claim supported by alternative theories in the complaint may not be characterized as "necessarily federal" unless the federal law question is essential to each of those theories. *See Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir.1996) (stating, "if a single state-law based theory of relief can be offered for each . . . cause[ ] of action in the complaint, then the exercise of removal jurisdiction is improper."). Here, Plaintiffs' complaint offers multiple allegations and theories of unfair and deceptive conduct on the part of Defendants, in addition to the allegation of violation of the ancillary services contracts, that might support its Section 17200 claim. As such, removal jurisdiction on this ground is improper.

### c. Substantial federal question

 A claim raises a substantial question of federal law when its resolution requires reference or interpretation of federal law. *Hendricks v. Dynegy Power Mktg., Inc.*, 160 F.Supp.2d 1155, 1161 (S.D.Cal.2001). The California Supreme Court has recognized that § 17200 pro-

vides a cause of action for unfair business practices even in the absence of the breach of any other law. *See Cel–Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal.4th 163, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) ("The statutory language referring to 'any unlawful, unfair or fraudulent' practice makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law."). Thus, Plaintiffs do not need to prove the violation of a federal law to succeed under California's Business and Professions Code Section 17200. This Court already made this point clear in its earlier decision in *Hendricks,* stating explicitly that "[p]laintiffs can state a violation under § 17200 … by alleging that the anticompetitive activity was unfair or deceptive even if not unlawful." *Id.* at 1165.

Here, Plaintiffs allege precisely that anticompetitive activity that was unfair or deceptive. Plaintiffs claim that Defendants took unfair advantage of California's deregulation of the electricity market by manipulating the market such that the State of California was in a state of emergency, and resultant high prices were unfairly passed on to consumers and taxpayers. (Ct.Rec.1.) Consequently, the question whether Defendants improperly manipulated California energy markets by exercising market power in violation of California Business and Professions Code Section 17200 is not one that depends on the resolution of a federal question. Accordingly, jurisdiction cannot be based on the "substantial federal question" exception to the well-pleaded complaint rule.

Defendants attempt to avoid this conclusion, claiming that California courts will not use the "unfair or fraudulent" prongs to regulate conduct in complex markets more appropriately subject to administra-tive or legislative regulation. In the cases cited by Defendants, however, the legislature itself had made an attempt to grapple with the specific problem complained of by the plaintiff and, thus, the courts did not believe judicial intervention was appropriate. *See, e.g., Wolfe v. State Farm Fire & Cas. Ins. Co.,* 46 Cal.App.4th 554, 568, 53 Cal.Rptr.2d 878 (1996) (stating, "[h]ere, as noted, the Legislature has expressly decided to tackle the problem."). Here, federal law does not address all of the conduct complained of by Plaintiffs (in their complaints to breaches of agreements governed by the ISO tariffs forms, Plaintiffs reference but one allegation of misconduct on the part of Defendants) and, as such, there is no indication that legislative action has attempted to address all of the issues raised by Plaintiffs. As a result, the case law cited by Defendants is inapposite. Plaintiffs' claim does not raise a substantial question of federal law.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Motions to Remand are **DENIED**. Plaintiffs' complaints allege a claim over which the Court has original jurisdiction and, thus, removal was proper.

**IT IS SO ORDERED**. The District Court Executive is directed to enter this order and to provide copies to counsel.