**In re CALIFORNIA WHOLESALE ELECTRICITY ANTITRUST LITIGATION Public Utility District No. 1 of Snohomish County, Plaintiff,**

**v.**

**Dynegy Power Marketing, Inc., et al., Defendants.**

**No. 02–CV–1993–RHW, MDL 1405.**

United States District Court, S.D. California.

Jan. 6, 2003.

Steve W Berman, Hagens and Berman, Seattle, WA, Kevin P Roddy, Hagens Berman, Los Angeles, CA, Michael A Goldfarb, Law Offices of Michael Goldfarb, Seattle, WA, for Plaintiff.

Gregory P Lindstrom, Latham and Watkins, San Francisco, CA, Luce Forward Hamilton and Scripps, San Diego, CA, Timothy B Taylor, Sheppard Mullin Richter and Hampton, San Diego, CA, for Defendants.

### ORDER GRANTING MOTIONS TO DISMISS

WHALEY, District Judge.

Before the Court is Defendant Powerex Corporation's Motion to Dismiss and Motion to Strike (Ct.Rec.3) and Defendants' Motion to Dismiss Complaint (Ct.Rec.12).[1] A hearing was held on December 19, 2002 in San Diego, California. Plaintiffs and Defendants were present and represented by counsel.

#### BACKGROUND

Defendants' motions for dismissal are premised on the "filed-rate doctrine" and federal preemption principles. In order to resolve these legal issues; however, it is important to detail the rather complex factual context in which they arise.

### A. California's Deregulated Energy Market

Plaintiff Public Utility District No. 1 of Snohomish County ("Snohomish") brings the current lawsuit seeking money damages and injunctive relief for prices charged by the Defendants, a group of energy sellers, for sales of electricity made in the deregulated California energy market in the year 2000. A proper determination of the validity of Plaintiff's claims hinges on an understanding of the nature and operation of California's deregulated energy market.

In the mid–1990s, California moved to deregulate its energy markets. *See* California Assembly Bill 1890 (AB 1890). In restructuring its energy markets, California sought to separate utilities' vertically-integrated generation, transmission, and distribution functions with a framework under which competition would be allowed in the supply of electric power. This new scheme replaced the regulation of retail rates based upon cost and reasonable rate of return with competitively determined "market-based rates." Theoretically, deregulation was supposed to allow the free market to set electricity prices, rather than relying on cost-based rates set through regulation.

This restructuring involved the creation of two new non-governmental corporations to coordinate the transmission and sale of electricity; the Independent System Operator ("ISO") and the California Power Exchange ("PX"). These entities were organized under California law, but regulated by the Federal Energy Regulatory Commission ("FERC"). Pursuant to deregulation, the price of energy was no longer set by regulators, but, rather, determined through competitive auctions administered by the PX. The PX operated a continuous state-wide auction, matching bids for sale and purchase of wholesale electricity.[2] The PX matched supply bids with requirements for the delivery of electricity, as

---

1. The second motion-Motion to Dismiss Complaint-is brought by a group of eight other Defendants besides Powerex.

2. The PX is no longer operational.

expressed by demand bids from buyers. The ISO operated the electrical grid for the State of California and purchased electricity as needed to assure system reliability. If customer demand was not met by the PX, then the ISO was required to procure power to maintain the stability of the grid.

In order for the PX and ISO to become operational, FERC was required to approve certain filings by the PX and ISO. In particular, the ISO and PX filed tariffs with FERC, and FERC reviewed and approved those tariffs as an appropriate means of achieving "just and reasonable" rates before authorizing the PX and ISO markets to operate. These tariffs comprised the rules for trading in the California wholesale electricity markets. Every participant in the market had to formally bind itself to comply with those tariffs. It is the alleged, ensuing manipulation of this new deregulated scheme that forms the basis of Plaintiff's complaint.

## B. Allegations in the Complaint

Plaintiff's complaint seeks redress for alleged unfair business practices and market manipulation of the wholesale energy market by the Defendants. (Ct.Rec.1.) More specifically, Plaintiff "alleges that defendants unlawfully manipulated the market for electric energy by fixing prices and restricting supply into the markets operated by the [PX] and the [ISO], or by engaging in other conduct for the purpose of artificially inflating the price of electricity and/or charging unlawful prices for such electricity." *Id.* In ¶ 6 of its complaint, Plaintiff further alleges that it has been "forced to pay prices for electricity *in excess of rates that would have been achieved by a competitive market.*" *Id.* (emphasis added).

Plaintiff brings a cause of action for violation of the California antitrust law ("Cartwright Act") and a cause of action for violation of California's Unfair Competition Law ("UCL"). *Id.* As to the state antitrust claim, Plaintiff alleges that Defendants "gamed" the market, which resulted in "wholesale energy being sold at prices that far exceed the price which energy would be sold in a truly competitive market." *Id.* In relation to Plaintiff's UCL claim, it alleges "defendants never filed their rates ... with" the result of which "deprived the public ... notice and information necessary to make informed decisions about rates." *Id.*

Of particular import to the current motion is the relief sought by Plaintiff in its complaint. Specifically, Plaintiff asks the Court to "enjoin the defendants from continuing to conduct business via the unlawful and unfair business acts or practices described herein," to order the Defendants "to disgorge" all monies wrongfully obtained, and to order the Defendants "to pay restitution to restore to plaintiff all funds acquired by means of any act or practice declared by this Court to be an unlawful or unfair act or practice." *Id.*

## C. Ongoing FERC Proceedings

Currently, there are several cases pending before FERC regarding matters similar, if not identical, to those initiated by Plaintiff in this Court. There are pending Section 206 proceedings at FERC filed by San Diego Gas & Electric, in which FERC is investigating whether refunds should be ordered for sales into the California wholesale energy markets. *See SDG & E v. Sellers,* 92 F.E.R.C. ¶ 61,172 (2000). FERC is also conducting a broad investigation into whether any seller of electricity in the California wholesale markets manipulated, or "gamed," those markets. *See Fact–Finding Investigation of Potential Manipulation of Electric and Natural Gas Prices,* 98 F.E.R.C. ¶ 61,165 (2002). Related proceedings have been brought with

respect to the Pacific Northwest markets. *See Puget Sound Energy v. Sellers,* 96 F.E.R.C. ¶ 63,044 (2001). Lastly, Snohomish itself has apparently filed two complaint proceedings with FERC concerning long-term power supply contracts that it executed with two suppliers. *See Nevada Power Co. and Sierra Pac. Power Co. v. Duke Energy Trading & Mktg., L.L.C., et al.,* 99 F.E.R.C. ¶ 61,047 (2002) (consolidated proceedings).

### DISCUSSION

As noted, Defendants assert two related, but separate, grounds in support of their motions to dismiss Plaintiff's claims; the filed rate doctrine, and federal preemption. The validity of each of these principles as justification for dismissal is addressed, in turn, below.

## I. The Filed Rate Doctrine

Defendants' motions to dismiss require the Court to consider the application of the "filed rate doctrine" to Plaintiff's state law claims. The filed rate doctrine has a long history in federal law, but here, it is being asserted in a contemporary regulatory context, which offers some new twists to its otherwise rather straightforward application. As noted above, the key feature of California's recently deregulated wholesale energy markets is the markets' reliance on "market-based rates." These rates are still subject to FERC oversight, but to a much lesser extent than traditional "cost-based rates." Thus, the determinant question in this case in regard to the application of the filed rate doctrine is whether the doctrine applies to the relatively new innovation of "market based rates" governing wholesale energy trading.

**3.** Section 824e(a) states, in pertinent part, that FERC "shall determine the just and reasonable rate, charge, classification, rule, regu-

### A. Contours of the Filed Rate Doctrine

■ The filed rate doctrine has its roots in the Federal Power Act ("FPA") itself. *See generally* Federal Power Act, §§ 1 *et seq.,* 321 as amended, 16 U.S.C.A. §§ 792 *et seq.* Under the FPA, regulatory jurisdiction over electricity is divided into two components: states have regulatory authority over intrastate retail sales of electricity, and the federal government has exclusive jurisdiction over interstate, wholesale sales. Thus, in the FPA, Congress drew "a bright line easily ascertained between state and federal jurisdiction ... [t]his was done in the Power Act by making [FERC] jurisdiction plenary and extending to all wholesale sales in interstate commerce except those which Congress has made explicitly subject to regulation by the States." *Federal Power Comm'n v. Southern California Edison Co.,* 376 U.S. 205, 215–16, 84 S.Ct. 644, 11 L.Ed.2d 638 (1964). The "bright line" division of authority adopted by Congress precludes any attempt to inject state law into areas reserved to FERC. Where FERC has jurisdiction, that jurisdiction is exclusive. *See Public Utils. Comm'n of California v. FERC,* 900 F.2d 269, 274 (D.C.Cir.1990) ("Here, if there be Commission jurisdiction over some component of the transaction, it is exclusive over the component.").

Section 824e(a) of the FPA vests exclusive jurisdiction over interstate wholesale electricity rates and practices affecting such rates with FERC.[3] *See* 16 U.S.C. § 824c(a). FERC's exclusive jurisdiction extends not only to rates *per se,* but also to "any rule, regulation, practice or contract affecting such" rates. 16 U.S.C. § 824e(a).

lation, practice, or contract to be thereafter observed and in force, and shall fix the same by order." *See* 16 U.S.C. § 824e(a).

■ The filed rate doctrine, in the electricity context, results from FERC's responsibility for setting and ensuring compliance with just and reasonable rates of wholesale electricity sale and transmission.[4] *See Pacific Gas & Elec. v. Lynch,* 216 F.Supp.2d 1016, 1033 (N.D.Cal.2002). The filed rate doctrine arises from the sum of these concepts, and holds that electricity generators who file their rates with FERC, as they are required to do by law, are insulated from lawsuits challenging those rates and from court orders having the effect of imposing a rate other than that filed with FERC. Because the filed rate doctrine is a product of federal regulatory jurisdiction staked out in the Federal Power Act, judicial enforcement of the filed rate doctrine is "a matter of enforcing the Supremacy Clause." *Nantahala Power & Light Co. v. Thornburg,* 476 U.S. 953, 963, 106 S.Ct. 2349, 90 L.Ed.2d 943 (1986).

■ Thus, under the filed rate doctrine, "[a] State must … give effect to Congress' desire to give FERC plenary authority over interstate wholesale rates, and to ensure that the State do not interfere with this authority." *Id.* at 966, 106 S.Ct. 2349. Moreover, courts, both state and federal, are prohibited from considering any rate other than that filed with FERC to be the appropriate wholesale rate. *Lynch,* 216 F.Supp.2d at 1033. As such, "[t]he filed rate doctrine prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 954 F.2d 485, 488 (8th Cir. 1992).

Given the exclusive jurisdiction of FERC over the PX and ISO wholesale markets, Defendants argue that Plaintiff's claims are barred because they "go to the heart of the filed rate doctrine." Defendants maintain that the Court should apply the doctrine to dismiss the Plaintiff's claims because, in order to resolve those claims, the Court would have to do precisely what the doctrine forbids, namely, set a rate different from that chosen by FERC.

■ The Court agrees with Defendants-the filed rate doctrine indeed bars Plaintiff's claims. As the Ninth Circuit stated in *County of Stanislaus v. Pacific Gas & Elec. Co.,* 114 F.3d 858, 863 (9th Cir.1997), "the filed rate doctrine bars all claims-state and federal-that attempt to challenge a rate that a federal agency has reviewed and filed." Moreover, the Ninth Circuit has made clear that "the filed rate doctrine [prohibits] not just a state court (or a federal court applying state law) from setting a rate different from that chosen by FERC, but also from assuming a hypothetical rate different from that actually set by FERC." *Transmission Agency of N. Cal. v. Sierra Pac. Power Co.,* 295 F.3d 918, 929–30 (9th Cir.2002).

Plaintiff's claims ask the Court to do exactly that. The allegedly improperly inflated rates paid by Plaintiff are those that resulted from the tariffs filed and approved by FERC. In its complaint, Plaintiff asserts that absent Defendants' improper conduct and anti-competitive acts, it would have paid different rates. As such, Plaintiff specifically seeks as redress the difference between the charged rates and the different, hypothetical rates it believes would have "been achieved in a competitive market." (Ct.Rec.1.) Thus, in order to resolve Plaintiff's claims and provide it the damages it seeks, the Court would be expressly required to assume "a hypothetical rate different from that actually set by FERC." *Transmission,* 295 F.3d at 929–30. This, the Court cannot do.

---

**4.** Judge Walker's opinion in *Lynch* contains a comprehensive and in-depth discussion regarding the history and genesis of the filed rate doctrine.

Each of the causes of action brought by Plaintiff require the Court to make this impermissible determination. As to Plaintiff's antitrust claims, Plaintiff seeks monetary compensation for "overcharges." The filed rate doctrine bars this claim because the Court would presumably have to measure the difference between the allegedly fixed wholesale price and an otherwise "just and reasonable" wholesale price. Indeed, the Ninth Circuit's decision in *County of Stanislaus* compels this conclusion. There, the plaintiff alleged that the "defendants' FERC-approved rates were the product of antitrust violations, and [sought] as damages the 'overcharge' that resulted from the fixed prices." *County of Stanislaus*, 114 F.3d at 863. The Ninth Circuit held, however, that such a claim was "precisely what the filed rate doctrine prohibits." *Id.*

The same result obtains concerning Plaintiff's UCL claims. Plaintiff alleges that Defendant engaged in "unlawful, fraudulent, or unfair business practices," which requires Defendants to provide "restitution to plaintiff for all funds unlawfully, unfairly or fraudulently obtained" as a result of Defendants' violations of the UCL. (Ct.Rec.1.) Plaintiff also claims that the Court should order Defendants to "[d]isgorge all revenues and profits acquired as a result of the unlawful business acts or practices." *Id.* Thus, to resolve this claim as well, the Court would be obliged to determine what level of disgorgement and restitution is appropriate, which, in turn, would require it to essentially determine

what a "just and reasonable" rate would have been had Defendants not engaged in the alleged behavior. Such a determination, however, lies within the exclusive province of FERC, as the filed rate doctrine applies to any "state law causes of action relating to rates established by federal agencies."[5] *County of Stanislaus*, 114 F.3d at 863 (citing *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 580, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981)).

Finally, the filed rate doctrine operates to bar the portion of Plaintiff's prayer for relief that asks the Court to order Defendants to "immediately cease all acts of unlawful and unfair competition and enjoin defendants from continuing to conduct business via the unlawful and unfair business acts or practices described herein." (Ct.Rec.1.) Plaintiff's request for injunctive relief seeks to enjoin conduct subject to the tariffs filed with FERC. The FERC tariffs govern the operation of the California wholesale energy markets and, in essence, the "unlawful conduct" and "unfair business acts" that form the gravamen of Plaintiff's complaint. Issuance of the injunction sought by Plaintiff would impose judicial oversight of all Defendants' actions, thereby effectively changing the rules established by FERC for participating in these markets. The filed rate doctrine bars this result. *See Town of Norwood, Mass. v. New England Power Co.*, 202 F.3d 408, 419 (1st Cir.2000) (holding injunctive relief barred by filed rate doctrine because relief sought by plaintiff interfered with tariffs filed with FERC).

---

5. Although not binding authority, the Court notes that in *Day v. AT & T Corp.*, 63 Cal. App.4th 325, 336, 74 Cal.Rptr.2d 55 (1998), the California Court of Appeals held, in a case involving claims brought under the UCL challenging rates that had been filed by common carriers with the Federal Communications Commission, that "[a] claim attacking rate practices made public in the filed tariff schedules asks this court in involve itself in the rate-making process, which it cannot do." Further, the court held that plaintiffs "may not seek to recover any money from respondents, whether they label their request one for *disgorgement* or otherwise." *Id.* at 337, 74 Cal.Rptr.2d 55 (emphasis added).

## B. The Filed Rate Doctrine's Application In Regard to FERC's Market–Based Rates Scheme

Plaintiff attempts to avoid the determination that the filed rate doctrine bars its claims by attacking the doctrine's application to FERC's modern market-based rate scheme employed in California's deregulated energy market. Plaintiff maintains that the filed rate doctrine does not apply in this scenario because the doctrine only bars claims that challenge rates specifically identified by tariff. Because the filed rate doctrine supposedly is to be construed narrowly, and under a market-based rate system, FERC does not review and approve rates *before* they are charged, Plaintiff claims the filed rate doctrine has no application here. Plaintiff argues that the doctrine does not apply because the FERC filings at issue do not include all the information required in traditional cost-based or formula-based rate filings. In any event, Plaintiff also maintains that the doctrine is inapplicable because Defendants obtained waivers of the FERC filing requirements. As the following discussion reveals, however, Plaintiff's arguments are not persuasive.

As an initial matter, the Court notes that Plaintiff mischaracterizes FERC oversight in the market-based rate scheme. Contrary to Plaintiff's assertions that FERC does not approve the rates charged in advance, FERC in actuality accomplished this review via the tariffs it approved.

As a regulatory agency, FERC has wide discretion to permit different types of tariffs. *See, e.g., Farmer's Union Cent., Exch., Inc. v. FERC,* 734 F.2d 1486, 1501 (D.C.Cir.1984) ("FERC is not required to adhere rigidly to a cost-based determination of rates"). As a result, in the case of wholesale electricity, FERC authorized the establishment of tariff-based market mechanisms for pricing power. Yet, the rates paid by wholesale buyers remained subject to FERC jurisdiction, and subject to FERC review. While Defendants do not file specific rates with FERC prior to selling power, they sell pursuant to the terms, conditions, and formulas established by the PX and ISO tariffs. As previously noted, FERC approved those tariffs as a means of achieving "just and reasonable" rates in advance of authorizing the PX and ISO markets to operate. As such, the filed rate doctrine applies to bar claims challenging the rates set by FERC in a market-based rate system.

Most damning to Plaintiff's arguments is the simple fact that case law does not support its contentions that the market-based rate system circumvents the filed rate doctrine. This argument-that the introduction of a market-based rate system skirts the reach of the filed rate doctrine-has been uniformly rejected by the courts. For instance, in *Town of Norwood,* the court rejected plaintiff's argument that "the filed rate doctrine should not apply where the 'regulated' rates have been left to the free market." 202 F.3d at 419. Instead, the court held that where rates are determined in a regulated market, "FERC is still responsible for ensuring 'just and reasonable' rates and, to that end, wholesale power rates continue to be filed and subject to agency review." *Id.*

Even more on point is Judge Walker's opinion in *Lynch.* There, the court addressed the filed rate doctrine in the same context as presented here-in regard to the market-based rate scheme central to California's deregulated wholesale energy market. The court held "despite ... the unique features of the regulatory context underlying the instant dispute, the court finds that the filed rate doctrine applies here in much the same way as it does under a cost-of-service regime." *Lynch,* 216 F.Supp.2d at 1038. Likewise, in

*Campbell v. San Diego Gas & Electric Co.,* 2001 WL 1860381 (E.D.Wash.2001), this Court plainly rejected the contention that the filed rate doctrine does not apply to market-based rates.

As a result, Plaintiff's additional assertion that the filed rate doctrine does not apply because the FERC filings do not include all the information required in cost-based or formula-based rate filings must be rejected. With market-based rates, FERC assures "just and reasonable" rates through a market analysis, which necessitates independent filing requirements for the market-based tariff system. Nothing in the Federal Power Act supports the assumption that because certain elements are necessary in a cost-based or formula-based rate tariff, they must also be found in the market-based system. As noted by Judge Walker in *Lynch,* "passing fashions in regulatory schemes of the day cannot rework the structure of the regulation established by Congress in the FPA." 216 F.Supp.2d at 1039. FERC has the authority to vary the oversight it wishes to employ depending on the type of rate used. As long as power generators file the information required by FERC, the filed rate doctrine is satisfied.

Lastly, the Court rejects Plaintiff's argument that the filed rate doctrine does not apply here because Defendants supposedly "waived" the FERC filing requirements. Rather, FERC appears to have only granted Defendants a waiver as to regulations used to determine cost-based rates under the Code of Federal Regulations. Since Defendants sold power pursuant to market-based rates, the requirements for cost-based rates were unnecessary and, thus, FERC waived them. This waiver does not jeopardize application of the filed rate doctrine here.

In sum, the filed rate doctrine protects FERC's decisions as to what constitutes a "just and reasonable" rate under a market-based rate system. Plaintiff's complaint cannot be characterized as anything but a direct attack on rates or an attack on matters underlying wholesale electricity rates, nor can the relief it requests be granted without affecting the terms, conditions, and rates for wholesale electricity. As such, the Court finds that the filed rate doctrine bars Plaintiff's claims.

## II. Federal Preemption

■ The second ground for dismissal raised by Defendants rests on the doctrine of federal preemption. Defendants maintain that the relief Plaintiff seeks-monetary relief to reduce past rates, and injunctive relief to regulate future conduct in the wholesale electricity market-cannot be granted without interfering with exclusive federal authority over wholesale power transactions.

From the outset, it is important that the Court differentiate between the different types of preemption that exist under the law. Defendants base their motion on a substantive preemption analysis-forwarding both field and conflict preemption as a defense to Plaintiff's claims-and do not rely on jurisdictional preemption, as discussed by this Court previously in *Hendricks v. Dynegy Power Marketing, Inc.,* 160 F.Supp.2d 1155 (S.D.Cal.2001). In *Hendricks,* the Court dealt with the question of whether Congress intended the Federal Power Act to completely occupy the field of energy production and distribution so as to convert the plaintiff's state law claims to a federal claim for purposes of removal jurisdiction. *Id.* at 1158. That issue is distinct from the question raised here by Defendants: whether the Federal Power Act functions as a preemption *defense* to Plaintiff's substantive claims.

"[T]he Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that 'interfere with, or are contrary to,' federal

law." *Hillsborough County, Fla. v. Automated Med. Labs., Inc.,* 471 U.S. 707, 712, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985) (quoting *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824)). Thus, in regard to a substantive preemption analysis, federal law may pre-empt state law in three different ways. First, Congress may preempt state law by so stating in express terms. *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). Second, preemption may be inferred when federal regulation in a particular field is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). Third, preemption may be implied when state law actually conflicts with federal law. *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility." *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941). It is the last two forms of preemption listed-field preemption and conflict preemption-that Defendants raise as grounds for dismissal here.

### A. Field Preemption

Defendants maintain that field preemption operates to bar Plaintiff's claims because, through the Federal Power Act, Congress occupied the wholesale portion of the field of electricity rate regulation. Accordingly, Defendants assert that Plaintiff's claims are preempted because it seeks state judicial action within this field.

Federal courts have held that "[t]hrough the FPA, Congress preempted states, state courts, and even federal courts from acting in areas reserved exclusively for the FERC." *See Gulf States Utilities Co. v. Alabama Power Co.,* 824 F.2d 1465, 1470 (5th Cir.1987). As previously discussed, the FPA gives the FERC exclusive jurisdiction over interstate wholesale electricity rates. *See* 16 U.S.C. §§ 824–824e. The FPA permits utilities to charge only just and reasonable rates and to file their rates with the FERC. 16 U.S.C. §§ 824d(a-c). FERC may review the filed rates and, if it finds a rate to be unjust or unreasonable, it may fix a just and reasonable rate. 16 U.S.C. §§ 824e(a). Therefore, under the FPA, a buyer or seller of electricity may not sue in court to change the filed rate for any reason. *See e.g., Montana–Dakota Utilities Co. v. Northwestern Pub., Serv. Co.,* 341 U.S. 246, 250, 71 S.Ct. 692, 95 L.Ed. 912 (1951) (under "filed rate doctrine," court may neither adjudicate whether rate is reasonable nor replace filed rate with more reasonable one).

If the federal government occupies a field, or an identifiable portion of it, any state regulation or state court action within the same, select area is necessarily preempted. The Supreme Court made this point clear in *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm.,* stating:

> State ... regulation is not preempted only when it conflicts with federal law.... When the federal government completely occupies a given field or *an identifiable portion of it,* as it has done here, the test of preemption is whether "the matter on which the state asserts the right to act is in any way regulated by the federal government."

461 U.S. 190, 212–213, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 236, 67

S.Ct. 1146, 91 L.Ed. 1447 (1947)) (emphasis added). The metaphor "occupy the field" is strongly associated with, and often taken to automatically entail, exclusive federal control. *See Public Util. Comm'n of California v. FERC*, 900 F.2d 268, 274 (D.C.Cir.1990).

Consequently, the fact that FERC maintains exclusive jurisdiction over interstate wholesale electricity rates indicates Plaintiff's state law claims are barred under the doctrine of field preemption. The only authority granted to the states under the FPA is over intrastate retail electricity sales. Because FERC retains "exclusive jurisdiction" over the regulation of interstate wholesale energy rates, under the "bright line" division of authority contained in the FPA, federal law occupies "an identifiable portion" of the regulated electricity field. Thus, to the extent that state regulation or court action would operate within the exclusive federal domain of wholesale energy rates, it is preempted. *Cf. id.*

Yet, Plaintiff's claims impermissibly seek to act within this field by asking the Court to award damages, restitution, disgorgement, or the like, in order to compensate Plaintiff for the difference between the wholesale rate it paid and what the Court determines to be a reasonable rate. This would equate to direct regulation of interstate wholesale electricity rates, which is preempted by the FPA.

**B. Conflict Preemption**

■ Even if Congress has not completely occupied a field, preemption exists if enforcement of state law could "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 298, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988). Even if Congress has permitted concurrent regulation within a particular field, state action is preempted if it interferes with, or even potentially interferes with, federal authority. *See id.* at 310, 108 S.Ct. 1145 ("When a state regulation presents the 'prospect of interference with the federal regulatory power,' then the state law may be preempted even though 'collision between the state and federal regulation may not be an inevitable consequence.'") (internal citations omitted). Not surprisingly, then, the Supreme Court has repeatedly found federal preemption wherever enforcement of state law would encroach on FERC's exclusive jurisdiction over wholesale interstate electricity rates. *See, e.g., Mississippi Power & Light v. Mississippi*, 487 U.S. 354, 371, 108 S.Ct. 2428, 101 L.Ed.2d 322 (1988) (holding state proceedings affecting interstate rates were preempted because "FERC has exclusive authority to determine the reasonableness of wholesale rates.")

Additionally, the Ninth Circuit has found preemption in circumstances similar to those present in this case. In *Duke Energy Trading and Marketing, L.L.C. v. Davis*, 267 F.3d 1042 (9th Cir.2001), the Ninth Circuit dealt specifically with California's deregulated energy markets. In *Davis*, the Ninth Circuit held that executive orders issued by Governor Gray Davis under the California Emergency Services Act that commandeered contracts in the PX block forward market were preempted because they directly affected the terms and conditions of wholesale power sales governed by FERC. *Id.* at 1057–58.

In *Transmission Agency of Northern California v. Sierra Pac. Power Co.*, 295 F.3d 918, 929 (9th Cir.2002), the Ninth Circuit found that plaintiff's tort and property claims impermissibly interfered with FERC's exclusive jurisdiction over the transmission and sale of wholesale electric power. In *Transmission*, plaintiff asserted state law tort and property claims based on its claimed right to a certain level

of interstate transmission capacity. The Ninth Circuit held that the state law claims were preempted, because the Federal Power Act "delegates to the Federal Energy Commission the *exclusive* authority to regulate the transmission and sale at wholesale of electric energy in interstate commerce." *Id.* at 928 (emphasis in original).

Similarly, it is clear that here Plaintiff's state law claims that seek repayment of wholesale rates found to be excessive under state law standards would inevitably conflict with FERC's exclusive jurisdiction to determine interstate wholesale rates. The Court would impermissibly interfere with FERC's rate-making authority if it refunds wholesale rates in this action, because in doing so the Court would essentially have to determine what constitutes "just and reasonable" rates. This conclusion is bolstered by the very fact that the same wholesale rates and rate-related practices that Plaintiff attacks here are the subject of several ongoing matters currently proceeding before FERC. Thus, it is difficult to escape the conclusion that any additional or different relief ordered by this Court would necessarily obstruct and frustrate FERC's proper regulatory effort.

## C. Plaintiff's Arguments Against Finding Preemption

Plaintiff offers three core arguments supporting its view that its claims are not subject to federal preemption. First, Plaintiff argues that the FPA merely fills gaps in state regulation and therefore cannot preempt its claims. Second, Plaintiff contends that preemption is inapplicable because the FPA allegedly does not preempt antitrust laws. Lastly, Plaintiff asserts that there can be no conflict preemption because conflict preemption requires an "actual" conflict with an agency ruling, as opposed to a "potential future" conflict.

■ As to Plaintiff's first argument, it contends that Congress limited FERC's jurisdiction to those select areas not subject to existing state regulation, and thus, judicial "conduct" that may incidentally impact rates is not preempted by FERC's jurisdiction. It argues that because utility companies were subject to California antitrust and UCL regulation at the time the FPA was enacted, California retains jurisdiction as to these claims.

Plaintiff's argument, however, ignores the simple fact that the Federal Power Act granted FERC exclusive jurisdiction over the "field" at issue here-interstate wholesale energy rates. FERC's jurisdiction need not cover the entire power industry, but rather only an "identifiable portion" of the field. *See Pacific Gas & Elec. Co.,* 461 U.S. at 212–213, 103 S.Ct. 1713. FERC's exclusive jurisdiction over wholesale energy rates constitutes such an "identifiable portion" of the field. Moreover, the D.C. Circuit has rejected an argument similar to Plaintiff's, stating "we must correct California's assumption that FERC's and its jurisdiction are *concurrent* ... [h]ere if there be [FERC] jurisdiction over some component of the transaction, it is exclusive over that component." *See Public Util. Comm'n of State of Cal. v. F.E.R.C.,* 900 F.2d 269, 274 (D.C.Cir.1990) (emphasis added).[6] Thus, Plaintiff's claim that state

---

6. In regard to its first argument, Plaintiff also points out that the FPA contains a policy declaration that federal regulation of the transmission and sale of electric energy was "to extend only to those matters which are not subject to regulation by the States." 16 U.S.C. § 824(a). Plaintiff claims that California antitrust and unfair competition regula-

tion of utilities were areas of state regulation contemplated by the policy declaration. The Supreme Court has rejected this contention, however, stating: "[t]he policy declaration that federal regulation is 'to extend only to those matters which are not subject to regulation by the States' is one of great generality.

law can be preempted only if the specific purpose of a state statute is to regulate in an area reserved to FERC is plainly wrong. The Ninth Circuit's decision in *Duke Energy* makes this point clear. As noted, *Duke Energy* concerned the California Governor's attempt to use his power under the California Emergency Service Act to commandeer property associated with the power industry. *See* 267 F.3d at 1047. Obviously the California Emergency Power Act is hardly a statute whose central purpose is to regulate matters Congress intended FERC to regulate, yet the Ninth Circuit still held that the Governor could not use his emergency powers in a manner that would affect the terms and conditions of wholesale power sales governed by FERC. *Id.* at 1057–58.[7]

■ Plaintiff's second argument is that the Federal Power Act does not preempt antitrust claims. In this regard, Plaintiff notes that Congress preserved application of antitrust laws by adopting a savings clause stating that the FPA, as amended by the Energy Policy Act, "shall not be construed to modify, impair, or supercede the antitrust laws." 16 U.S.C. § 824k(e)(2). Plaintiff also argues that under the Supreme Court's decision in *Otter Tail Power Co. v. United States*, 410 U.S. 366, 373–74, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973), and its progeny, Defendants are not entitled to antitrust immunity and, as such, Plaintiff's antitrust claims are not preempted.

Plaintiff's argument concerning the savings clause contained in 16 U.S.C. § 824k(e)(2) is a red herring. The savings clause only "saves" a role for federal antitrust laws in connection with certain sections of the FPA. *See* 16 U.S.C. § 824k(e)(2) (applying clause to sections 824i, 824j, 824l, and 824m). Section 824d, which deals with interstate wholesale electricity rates, is *not* covered by the savings clause.

Plaintiff's reliance on *Otter Tail*, and its progeny, also is misplaced. In *Otter Tail*, the Department of Justice alleged that Otter Tail had "monopolized" in violation of the Sherman Antitrust Act by refusing to "interconnect" and "wheel" power from other wholesalers to new municipal utilities where Otter Tail had been retailing power. 410 U.S. at 368, 93 S.Ct. 1022. At the time, the FPA did not grant the Federal Power Commission (FERC's predecessor) exclusive jurisdiction over the interconnection and wheeling of power issues. The FPC only had "limited authority" to order interconnections and no authority to order wheeling. *See id.* at 375, 93 S.Ct. 1022. Ottertail argued that its refusals to deal were not subject to federal anti-trust laws. *Id.* at 373, 93 S.Ct. 1022. The Court disagreed, noting that there was no pervasive regulatory scheme and, thus, "courts must be hesitant to conclude that Congress intended to override the fundamental national policies embodied in the antitrust laws." *Id.* at 374, 93 S.Ct. 1022.

It cannot nullify a clear and specific grant of jurisdiction, even if the particular grant seems inconsistent with the broadly expressed purpose." *Connecticut Light & Power Co. v. Federal Power Comm'n*, 324 U.S. 515, 527, 65 S.Ct. 749, 89 L.Ed. 1150 (1945).

7. The Supreme Court's decision in *Schneidewind* also dispels Plaintiff's argument that the relief it requests must directly regulate wholesale rates to be preempted. There, the state

statute regulating the issuance of securities did not directly regulate wholesale rates, but was nevertheless preempted because it could force gas companies to raise rates by preventing them from issuing securities. 485 U.S. at 308, 108 S.Ct. 1145 ("By keeping a natural gas company from raising its equity levels above a certain point, Michigan seeks to ensure that the company will charge only what Michigan considers to be a 'reasonable rate.' This is regulation of rates.").

*Otter Tail,* thus, relates to a different issue-antitrust immunity-that has little, if any, relation to the case at bar. The issue here is not whether Defendants are entitled to federal antitrust immunity but, rather, whether the Supremacy Clause prevents the Plaintiff's from employing state antitrust claims in a manner that intrudes on FERC's exclusive jurisdiction over interstate wholesale electricity rates. *See Square D. Co. v. Niagara Frontier Tariff Bureau,* 476 U.S. 409, 422, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986) (discussing distinction between antitrust immunity and preemption, stating "[w]e disagree ... with petitioners' view that the issue in *Keogh* and in this case is properly characterized as an "immunity" question. *Keogh* simply held that an award of treble damages is not an available remedy for a private shipper claiming that the rate submitted to, and approved by, the ICC was the product of an antitrust violation."). Preemption is a function of the Supremacy Clause, and controls the interaction between state and federal laws. *Otter Tail* addressed only the interaction of two federal laws-the FPA and Sherman Antitrust Act-and hence is not a preemption case. Defendants are not seeking a broad, blanket repeal of antitrust laws in their motion to dismiss, but rather seek a narrower determination of whether Plaintiff's antitrust claim (and its UCL claim) in this particular action improperly intrude upon Congress's treatment of wholesale electricity rates and conduct.[8] Thus, while as a general proposition it may be true that electric utilities subject to FERC jurisdiction may not enjoy antitrust immunity, it does not imply that Plaintiff may nonetheless invade FERC's jurisdiction by employing a private, state-law antitrust remedy that changes FERC-regulated interstate wholesale electricity rates.

■ Lastly, Plaintiff's contention that preemption requires an "actual" rather than "potential" conflict also lacks merit. To begin with, Supreme Court precedent holds otherwise. In *Schneidewind,* the Supreme Court held that the simply fact that there was an "imminent possibility" that the state regulation at issue would conflict with FERC jurisdiction supported a finding of preemption. *See* 485 U.S. at 310, 108 S.Ct. 1145. Likewise, in *Mississippi Power & Light,* the Court held that the Mississippi Supreme Court "erred in adopting the view that the pre-emptive effect of FERC jurisdiction turned on whether a particular matter was *actually determined* in the FERC proceedings." 487 U.S. at 373, 108 S.Ct. 2428 (emphasis added).

More importantly, it is difficult to characterize this case as only presenting a "potential" conflict, as FERC is currently conducting proceedings directly related to the issues in front of this Court. FERC appears to be in the process of making changes to the tariff rules and is investigating whether the operation of the tariffs, contracts, *etc.,* of the ISO and PX adversely affected the wholesale power markets in California. Thus, both the monetary and injunctive relief Plaintiff seeks here present direct and specific conflicts with FERC's regulatory authority.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Powerex Corp.'s Motion to Dismiss and Motion to Strike (Ct.Rec.3) and Defendants' Motion to Dis-

---

8. Plaintiff also cites several cases that followed *Otter Tail* and concluded electric utilities are not immune from federal antitrust laws. *See, e.g. Cantor v. Detroit Edison Co.,* 428 U.S. 579, 596 n. 35, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976). These cases do not deal with the issue of federal preemption of state law, however, and also have little bearing here.

miss Complaint (Ct.Rec.12) are **GRANT-
ED.**

**IT IS SO ORDERED.** The District
Court Executive is hereby directed to en-
ter this order and to furnish copies to
counsel.